IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HALLAMORE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Misc. Action No. 08-211-SLR |
| ) | |
| v. ) | |
| ) | (Civ. No. 08-cv-00075S) |
| CAPCO STEEL CORPORATION, ) | (Case Pending in the Dist. Of R.I.) |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

At Wilmington this 30th day of June, 2009, having considered Hallamore

Corporation's ("plaintiff") pending motion to compel non-party AmQuip Crane Rental,

LLC to respond to a subpoena by attending a deposition and by producing documents

pursuant to Federal Rule of Civil Procedure 45;

IT IS ORDERED that said motion (D.I. 1) is denied and said subpoena is

deemed invalid, for the reasons that follow:

1. **Introduction**.  Hallamore Corporation ("Hallamore") has filed a motion to

compel a non-party, AmQuip Crane Rental, LLC ("AmQuip"), to respond to a subpoena

issued out of the United States District Court for the District of Delaware.  (D.I. 1)  The

subpoena requires AmQuip to attend a deposition and to produce documents related to

Hallamore's on-going suit against Capco Steel Corporation ("Capco"), which is being

litigated in the United States District Court for the District of Rhode Island ("Rhode

---

Island Litigation").[1]  (D.I. 1; D.I. 2 at 1)  The court is hearing this motion pursuant to Fed, R. Civ. P. 45.  (D.I. 1)  The Rhode Island District Court has jurisdiction pursuant to 28 U.S.C. § 1332.  (D.I. 3 ¶ 3)

2. **Background.**  Hallamore is a Massachusetts corporation, based in Holbrook, Massachusetts.  (D.I. 3, ex. B at ¶ 1)  Hallamore owns a fleet of cranes, and leases the cranes as a portion of its business.  (*Id.*, ex. B at ¶ 7)  Capco, a Rhode Island corporation, "provides steel fabrication and erector services."  (*Id.*, ex. C at ¶ 2 and ex. B at ¶ 8)  On or around March 30, 2005, Hallamore and Capco entered two separate agreements.[2]  The Rhode Island Litigation arose out of the second agreement, the Equipment Lease Agreement, which required Capco to use Hallamore for all of its crane leasing needs for a period of five years, ending March 30, 2010.  (D.I. 3, ex. B at ¶¶ 12, 13)  Hallamore alleges that Capco, in breach of the Equipment Lease Agreement, leased cranes for use on numerous construction projects from Hallamore's competitors, including AmQuip.[3]  (D.I. 3, ex. B at ¶¶ 15, 16)  Hallamore alleges that AmQuip is a Delaware business entity.  (D.I. 2 at 2 and ex. B)

3. Hallamore issued the subpoena against AmQuip on June 19, 2008, commanding AmQuip to appear at a deposition in Philadelphia and to produce

---

[1] The suit is captioned *Hallamore Corporation v. Capco Steel Corporation, Capco Steel, LLC and Zakia Management, LLC*, D. R.I. Civil Action No. 08-cv-00075S.  (D.I. 2 at 1-2)

[2] Pursuant to the first agreement, Hallamore purchased four cranes from Capco. (D.I. 3, ex. B at ¶ 10)

[3] AmQuip also provides crane rentals and related services in the Northeastern Unites States.  (D.I. 3 at 3)

2

documents to the offices of Hallamore's counsel in Rhode Island.  (D.I. 2, ex. A)  The

subpoena required delivery of the requested documents by July 8, 2008 and required

AmQuip to appear for the deposition on August 7, 2008.[4]  (Id.)  On July 3, 2008,

AmQuip served its objections to the subpoena and stated that it would not produce

documents in response to the subpoena.  (D.I. 2 at 2 and ex. C; D.I. 3 at 5)  AmQuip

made thirteen objections to the subpoena, which AmQuip has broken down into three

categories:  (1) the subpoena is defective and was invalidly served; (2) the subpoena is

overbroad and unduly burdensome; and (3) the subpoena calls for disclosure of trade

and business secrets.[5]  (D.I. 2, ex. C; D.I. 3 at 5)

4.  On or around August 1, 2008, the parties discussed the scope of the

subpoena.  (D.I. 2 at 3)  AmQuip alleges that it reiterated that the subpoena was invalid

and that "any documents other than those responsive to requests (1) and (2) (and

possibly (4)) fell well beyond the permissible scope of discovery," but stated that it

would search for all documents responsive to the subpoena.  (D.I. 3 at 5)  Hallamore,

---

[4] The subpoena, (D.I. 2, ex. A), made six requests for documents or items from
the period between March 30, 2005 and the date of the subpoena:  (1) documents
concerning the lease, rental or use of any crane by Capco; (2) all agreements or
contracts between AmQuip and Capco concerning Capco's lease, rental or use of any
crane; (3) all communications between AmQuip and Capco concerning the lease, rental
or use of any crane by Capco; (4) all checks and other records of payments by Capco
to AmQuip concerning the lease, rental or use of any crane by Capco; (5) all
communications between AmQuip and Capco concerning Hallamore; and (6) all
documents identifying, or relating to Hallamore.

[5] Hallamore indicated that it would address concerns over confidential
information by treating all confidential documents or information as "Highly Confidential
- Attorneys Eyes Only."  (D.I. 2, ex. E)  Also, a stipulated protective order between
Hallamore and Capco, allows non-parties to protect secret information by declaring
such information "Highly Confidential – Attorneys Eyes Only."  (D.I. 5, ex. 5 at ¶ 3)

3

alleging that the parties had agreed that AmQuip would get back to Hallamore on whether AmQuip would respond to the subpoena and not having subsequently heard from AmQuip, contacted AmQuip on October 2, 2008 to further demand a response to the subpoena. (D.I. 2 at 3)

5. According to Hallamore, AmQuip produced fifty-seven pages of documents on October 17, 2008. (*Id.*) AmQuip says that it produced a spreadsheet containing all of the information from relevant invoices, minus sensitive pricing information, and produced copies of all rental agreements between AmQuip and Capco. (D.I. 3 at 6) AmQuip asserted that this step was necessary because it viewed the pricing information in the invoices and contracts as business secrets, and it believed that creating a spreadsheet was more efficient than redacting all pricing information from the invoices. (*Id.* at 5) Hallamore, unsatisfied with the response to the subpoena, alleged in an October 29, 2008 e-mail that the response was deficient. (D.I. 2 at 4) AmQuip reiterated in a November 11, 2008 e-mail that the additional documents sought were not relevant to the Rhode Island Litigation. (D.I. 3 at 6; D.I. 2 at 4) Hallamore filed this motion on November 20, 2008 to compel a response to the subpoena. (D.I. 1) Hallamore requests that the court order AmQuip to: (1) produce documents responsive to the subpoena within five days of the ruling on this motion; (2) produce a privilege log pursuant to Rule 45(d)(2) to the extent that attorney-client privilege and/or work product doctrine are implicated; and (3) appear for a deposition in Philadelphia as originally noticed within a reasonable time. (*Id.*)

4

6. **Standard of review.**  Rule 45(a)(2)(B) requires that a subpoena for

attendance at a deposition issue from the district where the deposition is to be taken.

Typically, a subpoena for production of documents must issue from the district where

the documents are located.  Fed. R. Civ. P. 45(a)(2)(C); *City of St. Petersburg v. Total

Containment, Inc.*, 2008 WL 1995298 at *4 (E.D. Pa. May 5, 2008) ("the geographic

limitation in Rule 45(a)(2)(C) relates principally to the location **of the documents to be

produced**, rather than the specified location on the subpoena" (original emphasis)).

However, when a subpoena demands the production of documents in addition to

attendance at a deposition, the subpoena may issue from the court of the district where

the deposition is to take place.[6]  Fed. R. Civ. P. 45(a)(2)(C).

7. **Discussion.**  Because the subpoena, which was issued out of the District of

Delaware, calls for attendance at a deposition in the Eastern District of Pennsylvania,

the subpoena is defective and unenforceable with respect to the command for AmQuip

to attend a deposition in Philadelphia.[7]

8. Even if the subpoena for production of documents is judged independently, it

is still defective.  When dealing with corporations located in multiple states, the proper

---

[6] A subpoena must issue "for production or inspection, **if separate from a
subpoena commanding a person's attendance**, from the court for the district where
production is to be made." Fed. R. Civ. P. 45(a)(2)(C) (emphasis added).  This implies
that when the subpoena for production of documents is attached to a subpoena for
deposition, the whole subpoena may issue from the district which is appropriate for a
deposition subpoena.

[7] Hallamore incorrectly asserts that Rule 45(b)(2)(B), which allows for service of
the subpoena outside of the state but within 100 miles of the deposition site, makes the
subpoena valid.  This provision does not abrogate the explicit requirement that the
subpoena must issue from a court in the district where the deposition is to take place,
and instead merely allows for service of the subpoena outside of the district.

inquiry for determining the validity of a subpoena for the production of documents is "whether the agent for service of process possesses the degree of control over the documents which would make it appropriate to enforce a subpoena over a corporation from a court in one state, when the corporation's documents are located in another state."[8] *City of St. Petersburg*, 2008 WL 1995298 at *3 (citing *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 396 (D. Colo. 1998)). AmQuip alleges that the requested documents are located in Pennsylvania, not Delaware. (D.I. 3 at 10) Additionally, AmQuip alleges that it has never had its principal place of business in Delaware.[9] (D.I. 3, ex. C) Therefore, although AmQuip is registered and has an agent in Delaware (D.I. 2, ex. B), Hallamore has not alleged that the agent possesses the degree of control over the documents which would allow this district to issue a subpoena for production of documents located in the Eastern District of Pennsylvania. For the aforementioned reasons, the subpoena as issued is invalid with respect to the document production command.

---

[8] Although Hallamore listed Rhode Island as the site for production of documents, this alone does not invalidate the subpoena. "The appropriate focus . . . is not [the] address of production written on the subpoena, but the location of the documents requested, and whether or not they are in the control of a respondent within the district of the issuing court." *City of St Petersburg*, 2008 WL 1995298 at *3. Indeed, this approach upholds the underlying purpose of the 1991 amendments to Rule 45, which intended to "facilitate service of subpoenas for depositions or productions of evidence at places distant from the district in which the action is proceeding." *Id.* (citing Fed. R. Civ. P. 45, 1991 Amendment, Purpose of Revision).

[9] AmQuip's website also shows that AmQuip does not have a location in Delaware. Crane Rentals and Related Services, AmQuip, Locations, http://www.amquip.com/news_press.cfm?story=74.

9. **AmQuip has not waived its objections.** Hallamore asserts that AmQuip

has waived any objections because it did not seek a protective order pursuant to Rule

26(c), which says that a party "may move for a protective order in the court where the

action is pending." (D.I. 2 at 5) However, jurisdictional defects emanating from a

subpoena issued in the wrong court cannot be waived.[10] *See Doe I. v. Pauliewalnuts*,

2008 WL 4326473 at *3 (W.D. Va. Sept. 19, 2008). Although a motion to quash would

have been the preferable course of action for AmQuip, this court cannot enforce a

subpoena issued incorrectly from this district. *See Kupritz v. Savannah Coll. of Art and

Design*, 155 F.R.D. 84, 88 (E.D. Pa. 1994) ("The subpoena issued from the wrong court

and, although a timely motion to quash would have been the preferable procedure, this

court lacks jurisdiction to enforce it.").

10. **The court cannot amend the defective subpoena.** Courts have typically

held that subpoenas issued from the wrong court are void under Rule 45, unless the

mistake is due to clerical error.[11] *See e.g.*, *Pauliewalnuts*, 2008 WL 4326473 at *2

___

[10] Additionally, Hallamore itself acknowledges that a party "must attend a deposition **if the place stated in the subpoena satisfies the requirements of Rule 45(a)**, unless the witness obtains a protective order. (D.I. 2 at 5 (citing Wright & Miller, *Federal Practice and Procedure*, § 2112) (emphasis added)) Because the subpoena does not satisfy the requirements of Rule 45(a), AmQuip was not required to move for a protective order prior to the date of the deposition listed on the subpoena (August 7, 2008).

[11] Hallamore argues that the court has the discretion to modify the subpoena and, presumably, since Hallamore has indicated its willingness to hold the deposition in Delaware, Hallamore wants the court to amend the faulty subpoena so that it lists a valid deposition site in Delaware. (D.I. 5 at 6) In *City of St. Petersburg*, however, the party seeking enforcement of the incorrectly issued subpoena had moved to amend the incorrect subpoena. 2008 WL 1995298 at *1. In this case, conversely, Hallamore asks the court to enforce the invalid subpoena without proposing amendments which would make the subpoena valid.

7

(court may enforce a subpoena captioned from the wrong court if the mistake is due to clerical error, but will not enforce a subpoena issued from the wrong court); *see also Kupritz*, 155 F.R.D at 88 (a court might consider a subpoena captioned from the wrong court through an accident or mistake, but could not enforce a subpoena intentionally issued from an incorrect district). Therefore, as Hallamore knowingly and intentionally captioned the subpoena as issuing from an incorrect district, the subpoena is invalid, unenforceable, and cannot be amended. Ultimately, the Eastern District of Pennsylvania is the appropriate district from which this subpoena should have been issued, as the convenience for the non-party is the highest concern when dealing with such subpoenas.[12]

11. **Costs.** Rule 45(c)(1) requires a party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The court "**must** enforce this duty and impose an appropriate sanction – which may include lost earnings or reasonable attorney's fees – on a party or attorney who fails to comply." Fed. R. Civ. P. 45(c)(1) (emphasis added). Also, "[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1)." *CareToLive v. Von Eschenbach,* 2008 WL 552431 at *3 (S.D. Ohio Feb. 26, 2008)

---

[12] Although judicial efficiency will not be served by this decision as Hallamore is most likely correct that it is entitled to the documents and deposition that it requests, the court is not permitted to rule on the motion. *See Pauliewalnuts,* 2008 WL 4326473 at * 3 n.3. A Rhode Island Magistrate Judge granted Hallamore's motion to compel enforcement of an almost identical subpoena issued to a similarly situated competitor (LJ Crane & Rigging, Inc.). (D.I. 5, ex. 3; compare D.I. 5, ex. 2 (LJ Crane & Rigging, Inc. Subpoena) to D.I. 2, ex. A (AmQuip subpoena)).

8

(citation omitted).  Hallamore was informed as to the invalidity of its subpoena on several occasions, and failed to correct them.  (D.I. 3, ex. C at ¶¶ 1, 2; D.I. 3 at 5 (AmQuip reiterated invalidity of the subpoena in August 1, 2008 phone conversation)) Therefore, AmQuip has suffered an undue burden in being forced to respond to the invalid subpoena and reasonable expenses are granted.[13]

12.  On or before **August 3, 2009**, AmQuip shall file an affidavit in support of its reasonable expenses.

_____

United States District Judge

---

[13] The underlying purpose of Rule 45(c)(1), is "to protect a non-party witness as a result of a misuse of the subpoena," which also shows that the imposition of sanctions is appropriate.  *CaretoLive*, 2008 WL 552431 at *3 (citing Fed. R. Civ. P. 45(c)(1) advisory committee's notes (1991) (quotation marks omitted)).